## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| HH ASSOCIATES U.S., INC., | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 26-02677 |
| v. | ) | |
| | ) | |
| UNITED STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; RODNEY S. SCOTT, in his | ) | |
| official capacity as Commissioner of United States | ) | |
| Customs and Border Protection; and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff HH Associates U.S., Inc., by and through its attorneys, alleges and states:

1.      This action concerns Defendants' unlawful imposition of new tariffs on goods imported into the United States through a series of executive orders beginning in February 2025.

2.      In issuing these executive orders, President Trump unlawfully relied on the International Emergency Economic Powers Act ("IEEPA"), claiming that IEEPA grants the President authority to impose tariffs.

3.      Plaintiff is an importer, as defined in 19 C.F.R. 101.1, of goods into the U.S. subject to the tariffs at issue.

4.      On February 20, 2026, the U.S. Supreme Court struck down these tariffs and held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

1

5.    The Supreme Court also confirmed that challenges to the IEEPA tariffs are "within the exclusive jurisdiction of" the Court of International Trade. *Id*. at 5 n.1.

6.    Plaintiff brings this action now to ensure that liquidation with respect to the entries for which Plaintiff paid IEEPA tariffs does not occur and to preserve its right to a refund with respect to those entries, as well as to demand a full refund (with interest) from Defendants for all IEEPA tariffs Plaintiff has paid to Defendants.

7.    This Court is bound by the Supreme Court's ruling in *Learning Resources, Inc. v. Trump* and should order the relief Plaintiff requests.

## PARTIES

8.    Plaintiff, HH Associates U.S. Inc., is a U.S.-based company incorporated in the State of Delaware with its headquarters located in Chicago, Illinois. The company specializes in creative production and marketing procurement services for businesses.

9.    Defendant United States Customs and Border Protection ("CBP") is an agency of the United States Department of Homeland Security headquartered in Washington, D.C. CBP collects duties on imports into the United States and collected the payments Plaintiff made pursuant to the IEEPA tariffs.

10.    Defendant Rodney S. Scott is the Commissioner of CBP and oversees CBP's collection of the duties Plaintiff paid pursuant to the IEEPA tariffs. Mr. Scott is sued in his official capacity.

11.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION

12.    The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i), which confers "exclusive jurisdiction" on the Court over "any civil action commenced

against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue[.]" 28 U.S.C. § 1581(i)(1)(B); *see also V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1328–1329 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

13.    The Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 2631(i), stating that "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." 28 U.S.C. § 2631(i).

14.    The Court has "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order "any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition." 28 U.S.C. §§ 2643(a)(1), (c)(1).

## STANDING

15.    Plaintiff has standing to sue because the IEEPA tariffs imposed by Defendants have been held by the Supreme Court to be unlawful and have adversely affected and aggrieved Plaintiff as the importer of record for goods from countries to which the IEEPA tariffs apply who was consequently required to pay these unlawful tariffs. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"); 28 U.S.C. § 2631(i).

16.    The relief Plaintiff seeks would redress those injuries.

**GENERAL ALLEGATIONS**

I.    **Background**

    A.    **Legal authority to impose tariffs**

17.    Through the Omnibus Trade and Competitiveness Act of 1988, Congress created the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. 100-418, 102 Stat. 1107 (1988).

18.    The HTSUS establishes tariff rates in the United States, and the United States International Trade Commission ("ITC") maintains and publishes the current Harmonized Tariff Schedule consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *Michael Simon Design, Inc. v. United States*, 637 F. Supp. 2d 1218, 1225 (Ct. Int'l Trade 2009) (citation omitted) ("The authority to modify the HTSUS lies with the President, who may do so, at his complete discretion, based on the recommendations by the ITC."); *Maple Leaf Marketing, Inc. v. United States*, 528 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021) (discussing presidential amendment of HTSUS by proclamation).

19.    The CBP is responsible for assessing and collecting duties on imports into the United States, including the IEEPA tariffs. *See* 19 U.S.C. §§ 1500, 1502.

20.    The CBP classifies imported merchandise in accordance with the HTSUS. 19 C.F.R. § 152.11.

21.    The CBP thus assesses and collects duties on imports entering the United States using the HTSUS classifications of the goods and the rates HTSUS established under the applicable classification. 19 U.S.C. §§ 1202, 1500, 1502.

22.    The HTSUS is periodically modified according to a statutory scheme contained in the Omnibus Trade and Competitiveness Act of 1988 to account for changes to the international

harmonized tariff system. *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335, 1336–37 (Fed. Cir. 2010).

### B.    The process of levying tariffs or duties on imports

23.    When goods are imported into the United States, the importer of record submits a customs declaration to provide information on the goods' value, origin, and HTSUS classification, and pays an *estimated* duty on the entry based on that information. 19 U.S.C. § 1484.

24.    CBP reviews the customs declaration to confirm that the information is correct and to determine the final amount of duty owed on the goods. 19 U.S.C. § 1500.

25.    After CBP issues a final appraisement of the goods, it "liquidates" the entry and notifies the importer whether it owes additional funds or will receive a refund. 19 U.S.C. § 1504.

26.    "Liquidation" is thus the "final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

27.    Liquidation must typically occur within one year. 19 U.S.C. § 1504(a). CBP provides notice of liquidation of entries on its website. 19 C.F.R. § 159.9(a).

28.    However, CBP may extend the deadline for liquidation for up to one year at the importer's request if good cause exists. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

29.    If an importer wishes to protest a liquidation after liquidation occurs, it can file a protest within 180 days, but only if the liquidation is protestable. 19 U.S.C. § 1514.

30.    A liquidation is *not* protestable if CBP was acting without discretion in imposing the duty. 19 U.S.C. § 1514; *Rimco Inc. v. United States*, 98 F.4th 1046, 1052–53 (Fed. Cir. 2024).

31.    Some courts have suggested that an importer may not have a remedy allowing it to receive a refund for tariffs or duties it paid after the entry has liquidated, even if the duty itself is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363–66 (Ct. Int'l Trade 2021) (discussing, in dicta, this Court's view that it has "explicit power to order reliquidation

and refunds where the government has unlawfully exacted duties" while observing that "the Court of Appeals has explicitly and implicitly called the breadth of the CIT's statutory authority into question."); *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025) (quoting *Agro Dutch Indus. Ltd. v. United States*, 589 F.3d 1190 (Fed. Cir. 2009)) (recognizing a "general rule" that "liquidation moots a party's claims pertaining to the liquidated entries.").

32.     However, in *AGS Co. Auto. Sols., v. United States Customs & Border Prot.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) this Court confirmed that it has the authority to reliquidate entries subject to IEEPA tariffs. The government has also represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs & Border Protection, et al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

33.     This Court can suspend liquidation pursuant to its equitable powers. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp.3d at 1365–66, 1372 (granting plaintiffs' motion for preliminary injunction to temporarily restrain liquidation).

**II.     President Trump issued multiple executive orders implementing tariffs.**

34.     On January 20, 2025, the President declared a national emergency at the United States' border with Mexico through Proclamation No. 10886, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8,327 (Jan. 20, 2025), which stated that "America's sovereignty is under attack . . . [from] cartels, criminal gangs, known terrorists, human traffickers, smugglers, unvetted military-age males from foreign adversaries, and illicit narcotics that harm Americans" at the border as threats to the United States. Proclamation No. 10886, 90 Fed. Reg. at 8,327.

35.     On February 1, 2025, the President issued Executive Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025), stating

6

that Mexican drug trafficking organizations posed a threat to United States' national security, foreign policy, and economy, that the Mexican government is allied with, and protects, these organizations, and that "[i]mmediate action" to address these threats was necessary in the form of ad valorem tariffs on Mexican products being imported into the United States. Exec. Order No. 14194, 90 Fed. Reg. at 9,117–18.

36.    The same day, the President also expanded the scope of the national emergency in Proclamation No. 10886 to include threats from Canada and the People's Republic of China and issued two more executive orders imposing tariffs on imports from those countries. *See* Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113, 9,113–15 (Feb. 1, 2025); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121, 9,121–22 (Feb. 1, 2025).

37.    Executive Order No. 14193 imposed additional 25 percent ad valorem duties on imports from Canada. Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. at 9,113–14 (Feb. 1, 2025).

38.    Executive Order No. 14194 imposed additional 25 percent ad valorem duties on imports from Mexico. Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. at 9,118 (Feb. 1, 2025).

39.    Executive Order No. 14195 imposed additional 10 percent ad valorem duties on imports from China. Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. at 9,122 (Feb. 1, 2025).

40.      These executive orders directed the Secretary of Homeland Security to modify the Harmonized Tariff Schedule of the United States (HTSUS) in order to implement the new, higher tariffs. 90 Fed. Reg. at 9,115, 9,118, 9,123.

41.      The tariffs described above in paragraphs 35–40 are collectively known as the "Trafficking Tariffs."

42.      Almost immediately, multiple amendments and other changes to the Trafficking Tariffs ensued through a barrage of further executive orders. *See, e.g.*, Exec. Order No. 14197, *Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9,183 (Feb. 3, 2025); Exec. Order No. 14198, *Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9,185 (Feb. 3, 2025); Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14231, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,785 (Mar. 6, 2025); Exec. Order No. 14232, *Amendment to Duties To Address the Flow of Illicit Drugs Across Our Southern Border*, 90 Fed. Reg. 11,787 (Mar. 6, 2025); Exec. Order No. 14256, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China as Applied to Low-Value Imports*, 90 Fed. Reg. 14,899 (Apr. 2, 2025).

43.      In a March 3, 2025 executive order, the President stated that China "ha[d] not taken adequate steps to alleviate the illicit drug crisis . . . and that the crisis described in Executive Order 14195 ha[d] not abated" and increased the ad valorem duties on goods imported from China from 10 percent to 20 percent. Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463, 11,463 (Mar. 3, 2025).

44.     On April 2, 2025, the President issued Executive Order No. 14257, which imposed baseline 10 percent ad valorem duties on nearly all imported goods and additional duties ranging from 11 percent to 50 percent on 57 countries (collectively, "Reciprocal Tariffs"). Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041, 15,045, 15,049–50 (Apr. 2, 2025). Like the Trafficking Tariffs, the Reciprocal Tariffs modified the HTSUS to effectuate the new, additional tariffs. *Id*. at 15,047.

45.     The President relied on claimed authority under the IEEPA in imposing both the Trafficking Tariffs and the Reciprocal Tariffs. 90 Fed. Reg. at 9,113–16, 9,117–19, 9,121–24, 15,041, 15,048.

46.     On April 8, 2025, following China's response with its own set of new tariffs on U.S. goods, the President raised the Reciprocal Tariff rate from 34 to 84 percent. Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509, 15,509 (Apr. 8, 2025).

47.     On April 9, 2025, the President suspended the country-specific ad valorem rates for all countries except China until July 9, 2025. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625, 15,626 (Apr. 9, 2025). For Chinese imports, the President again amended the Reciprocal Tariff rate, increasing it from 84 to 125 percent. *See id*.

48.     Following discussions with China, the President lowered the Reciprocal Tariff rate for imports from China to 10 percent. Exec. Order No. 14298, *Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China*, 90 Fed. Reg. 21,831, 21,831–32 (May 12, 2025).

49.     On July 30, 2025 the President imposed an additional ad valorem tariff rate of 40 percent on imports from Brazil. Exec. Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739, 37,739–40 (July 30, 2025). This additional 40-percent tariff was terminated for certain agricultural products through another executive order issued on November 20, 2025 following negotiations with the President of Brazil. Exec. Order 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467, 54,467 (Nov. 20, 2025).

50.     On July 31, 2025, the President issued Executive Order 14326, imposing further tariffs on certain trading partners, including a new 25-percent ad valorem rate on imports from India. Exec. Order 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37,963, 37,963–64, 37,967 (July 31, 2025).

51.     On August 6, 2025, Executive Order 14329 imposed even more stringent tariffs on imports from India. The Executive Order instituted an additional 25 percent ad valorem rate on imports from India after finding that "the actions of the Government of the Russian Federation with respect to the situation in Ukraine . . . pose[d] an unusual and extraordinary threat to the national security and foreign policy of the United States" and that the government of India had been importing oil from the Russian Federation ("Russian Oil Tariffs"). Exec. Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701, 38,701 (Aug. 6, 2025).

52.     As the initial Trafficking and Reciprocal Tariffs, the amendments and modifications continued to invoke the IEEPA and implemented changes to the HTSUS.

10

**III.    Plaintiff's payment of preliminary IEEPA tariffs**

53.    Plaintiff imports consist largely of consumer goods, such as apparel, furniture, and housewares, which Plaintiff cannot source domestically in a commercially viable manner for its business.

54.    Plaintiff's goods subject to the tariffs entered the United States under revised HTSUS classifications from China, with February 20, 2025, being the date of Plaintiff's first entry that was subject to the IEEPA tariffs.

55.    Plaintiff has paid IEEPA tariffs on merchandise subject to the same for the period beginning on or about February 20, 2025. CBP is no longer collecting these duties effective 12:00 a.m. on February 24, 2026.

56.    Liquidation on one entry for which Plaintiff has paid IEEPA tariffs occured on January 16, 2026, and liquidation for the remaining entries is expected to occur in 2026 or later.

**IV.    The Supreme Court has held that the IEEPA tariffs are unlawful.**

57.    In *V.O.S. Selections*, this Court enjoined the enforcement of the tariffs against the plaintiff. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025) (granting summary judgment for plaintiff to prevent enforcement of IEEPA tariffs). The Federal Circuit affirmed this Court's decision on appeal. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

58.    In another case, the U.S. District Court for the District of Columbia more broadly held that the IEEPA does not authorize tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). Although that decision was also appealed, the United States Supreme Court granted

certiorari in both *V.O.S. Selections* and *Learning Resources* before the Court of Appeals for the D.C. Circuit heard arguments in *Learning Resources*.

59. On February 20, 2026, the Supreme Court issued its opinion in both cases, affirming the Federal Circuit's decision and holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*[1], slip op. at 20.

60. While the cases were pending before the U.S. Supreme Court, the President issued additional executive orders imposing further tariffs and modifying others while continuing to rely on IEEPA.

61. Defendants continued to collect duties while the cases were pending. However, on February 22, 2026, CBP announced that duties imposed pursuant to the tariff orders at issue "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message #  67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026), available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

## COUNT I

### The IEEPA Tariffs are unlawful as held by the Supreme Court in *Learning Resources*.

62. Plaintiff incorporates the preceding paragraphs herein by reference.

63. This Court has held that the President acted outside of his authority under the IEEPA, 50 U.S.C. § 1701 *et seq.* in imposing tariffs on imported goods, explaining that the IEEPA does not authorize tariffs on imports and contains no clear delegation by Congress to the President

---

[1] This Complaint cites to the "*Learning Resources*" slip opinion because the case caption in the Supreme Court case treats it as the lead case. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Supreme Court affirmed the Federal Circuit's decision in *V.O.S. Selections*.

to impose or regulate tariffs. *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025).

64.     In *Learning Resources*, the Supreme Court considered whether the President has the authority to impose tariffs under IEEPA, as well as this Court's and the Federal Circuit's rulings in *V.O.S. Selections*. The Supreme Court held that the tariffs imposed under IEEPA are unlawful and that the IEEPA does not grant the President the power to impose tariffs. *Learning Resources*, slip op. at 16. The Supreme Court affirmed the Federal Circuit's decision, which had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id*. at 21.

65.     The tariffs at issue purport to impose duties and modify the HTSUS solely under IEEPA.

66.     The government has also confirmed that it would issue refunds and post-judgment interest to plaintiffs in the event the tariffs are held to be unlawful. Gov't. Mot. for Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

67.     This Court is bound by the Supreme Court's decision in *Learning Resources* and accordingly should order refunds of all IEEPA duties paid by Plaintiff, with interest, as provided by law.

* * *

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff respectfully requests that this Court:

a.   enter judgment in favor of Plaintiff;

b.   order Defendants to reliquidate any entries that have been liquidated with IEEPA tariffs;

c.   order Defendants to liquidate all unliquidated entries subject to IEEPA tariffs without IEEPA tariffs;

13

d.  order Defendants to refund Plaintiff, with interest as permitted by law, the funds Plaintiff paid on entries pursuant to the IEEPA tariffs and the associated executive orders;

e.  award Plaintiff its reasonable costs and reasonable attorneys' fees incurred in bringing this action; and

f.  grant Plaintiff such other relief as the Court may deem appropriate.

Dated:  April 7, 2026                          Respectfully submitted,

                                            */s/ Nithya Nagarajan*
                                            Nithya Nagarajan
                                            Cortney Morgan
                                            Robert Stang
                                            Michael Klebanov
                                            Joseph Diedrich
                                            Stephen Brophy

                                            HUSCH BLACKWELL LLP
                                            1801 Pennsylvania Avenue NW,
                                            Suite 1000
                                            Washington, DC  20006
                                            Tel. (202) 378-2300
                                            nithya.nagarajan@huschblackwell.com

                                            *Counsel to Plaintiff*